Filed 5/16/14  In re Joseph H. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JOSEPH H., a Person Coming Under the Juvenile Court Law. | B250627 (Los Angeles County Super. Ct. No. CK36465) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| T. H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

Appellant T.H. appeals the denial of her petition for modification under Welfare and Institutions Code section 388.[1] Appellant sought to have minor Joseph H. (Joseph), the biological infant son of her mother's cousin, removed from the foster family who had cared for him for nearly a year and placed in her home. Appellant contends the juvenile court failed to accord her a hearing on her petition and applied an incorrect standard. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Joseph was detained from his mother, Opal J. (Mother), on May 3, 2012, two months after his birth, and placed in foster care.[2] Within a few days of the detention, Joseph was placed with an unrelated couple, the H.'s, who soon expressed interest in adopting the boy. At the May 8, 2012 detention hearing, the court vested temporary placement and custody with the Department of Children and Family Services (DCFS) pending disposition or further order of the court. The court gave DCFS discretion to release the child to the alleged father and instructed DCFS to provide details regarding its efforts to identify relatives for placement.

At the June 2012 jurisdictional hearing, the court found true that Mother had a 17-year history of substance abuse, was a current user of cocaine, had mental and emotional problems, and had failed to provide adequate care for Joseph's deceased half-brother. Before the court could resolve the dispositional issues, DNA test results determined that A.H. was not Joseph's father and his involvement in the proceedings ceased. At a hearing on July 26, 2012, Mother named Clarence S.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Three of Mother's four older children had been removed from her care due to drug use and mental health issues. The fourth, an infant, died of unknown causes while in her care. The man Mother originally identified as Joseph's father, A.H., provided financial support, but was married to another woman and did not live with the family.

(Clarence) as another potential father. The court ordered DNA testing for Clarence and instructed DCFS to assess appellant, who had come forward and expressed interest in caring for Joseph.[3]

In early August 2012, before Clarence's relationship to Joseph was determined, the caseworker interviewed appellant. On August 23, DNA tests identified Clarence as the likely biological father. Further investigation revealed that Clarence had a history of drug abuse, as well as a lengthy criminal record.[4] An older son, H.S., had been the subject of an earlier dependency proceeding. Clarence had been reunified with the child in 2009, and had left him in the care of appellant.[5] Clarence did not seek custody of Joseph, stating that he was in no position to care for him, but asked that Joseph be placed with appellant.

The September 2012 report stated that DCFS had concluded appellant was not an appropriate placement because she had not been honest about her living situation during the original interview. Specifically, she claimed to live alone, failing to inform the caseworker that Joseph's half-brother H.S. was already residing with her, and that her brother Jermaine H. (Jermaine) also lived in the home. In addition, the caseworker had reason to believe an unrelated male was living in the home.[6] By this time, Joseph had been with the H.'s for four months and, in the caseworker's opinion, had developed a "significant bond" with them.

---

[3] According to appellant, her maternal grandfather and Clarence's father were siblings, making her the daughter of Clarence's cousin or his first cousin once removed.

[4] Clarence was incarcerated when Mother named him as the possible father. He was on probation thereafter.

[5] At that time, appellant's status as caretaker for H.S. was informal. Appellant did not obtain legal guardianship over H.S. until December 2012.

[6] Appellant was nevertheless permitted regular visitation with Joseph, which was eventually expanded to weekend and overnight visitation.

At a hearing on September 11, 2012, the court found Clarence to be Joseph's biological father. The court instructed DCFS to continue its evaluation of appellant for placement. The caseworker explained that appellant's home could not be approved for placement until DCFS could determine whether a criminal waiver was required for her brother Jermaine, who had been arrested several times.[7] The caseworker also expressed concern that Clarence might be living in appellant's home, as he used appellant's address for receipt of his mail and had stated in court that he lived there.

At the October 1, 2012 dispositional hearing, the court ordered no family reunification services for either parent, specifically finding that Clarence was not a presumed father. The court set a section 366.26 hearing for January 31, 2013. The October 1 order stated DCFS had discretion to place Joseph with any appropriate and approved relative who was willing to adopt.

On October 30, 2012, appellant's home was formally approved for placement. However, the caseworker recommended that Joseph not be moved because an adoption home study had not been completed for appellant. At that point, the foster parents had been approved for adoption. The caseworker expressed concern that appellant's home would not be approved because of the lack of clarity and honesty concerning who was living there.

In the January 2013 report, DCFS recommended that parental rights be terminated and that the permanent plan be adoption by the H.'s, noting that Joseph had been living with them for eight months. The caseworker reported that with respect to appellant, adoption approval had not yet been obtained.[8]

---

[7]     One of Jermaine's arrests had been for threatening to kill appellant. Although the charge was ultimately dismissed, appellant had obtained an emergency protective order.

[8]     The process had been delayed while the caseworker investigated allegations made by an anonymous caller in December. The caller stated that appellant had lied about

*(Fn. continued on next page.)*

4

The court continued the section 366.26 hearing to February 15, 2013, at which time the caseworker reported the adoption home study for appellant was complete except for the live scan of an individual who frequented the home. The court terminated parental rights at the February 15 hearing and granted the H.'s discretion to determine whether to allow the biological family to continue to have visits with Joseph.

In March 2013, appellant filed a petition for modification of a court order under section 388. The petition targeted the court's order of November 19, 2012 based on the court's failure to order Joseph placed in her home on that date. The petition was summarily denied. The court stated in its denial that placement had been vested with DCFS and that changing the order required a showing of abuse of discretion on DCFS's part. Appellant's adoption home study was approved on April 26, 2013, and she filed a second petition for modification on May 8. The petition requested modification of the February 15, 2013 order terminating parental rights. In a declaration in support of the petition, appellant stated that DCFS had had discretion to place Joseph with her since her home was approved in October 30, 2012 and had unreasonably refused to do so. Appellant attached copies of the letter approving her home for placement and approving her adoption home study. The court granted a hearing, stating in its order that the petition would be deemed an "abuse of discretion motion."

At the June 13, 2013 hearing, appellant addressed the court, stating she had complied with all of DCFS's requirements and concerns. She represented that she

being employed, that she had not worked for three years, and that her home was in foreclosure. The caller accused appellant of physically abusing a younger brother when he was in her care. The caller also reported that appellant's brother Jermaine, who continued to live in the home, had a temper problem and was a frequent marijuana smoker and that appellant associated with drug users.

5

had built a bond with Joseph during their visits. She also stated that the H.'s were not permitting visitation and that Joseph's older brother missed him. She contended that DCFS had unfairly extended the approval process. The court stated that it had reviewed the file to determine whether DCFS abused its discretion and concluded it had not. The court found that the length of time Joseph had been with the H.'s -- from the time he was two months old -- provided a reasonable basis for refusing the request to move the boy. Therefore, the court denied the motion.[9] This appeal followed.

## DISCUSSION

Appellant contends that the court erred by "changing the nature of appellant's 388 petition, narrowing the issue to be addressed" and "failing to allow appellant to present any evidence, witnesses, testimony or to make any argument." For the reasons discussed, we disagree.

Appellant does not dispute that following the termination of parental rights and pending adoption, DCFS, not the court, has the discretion to decide where a child should be placed. (See *In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397; § 366.26, subdivision (j) [once the court declares a child free from the custody and control of both parents, the court "shall" refer the child to the State Department of Social Services and the department "shall be responsible for the custody and supervision of the child and shall be entitled to the exclusive care and control of the child at all times until a petition for adoption or tribal customary adoption is granted"]; Fam. Code, § 8704, subd. (a) ["'The department . . . or licensed

---

[9]     The court modified its prior order to the extent it had given the H.'s unfettered discretion to deny visitation to the biological family and instructed DCFS to facilitate visitation.

adoption agency to which a child has been freed for adoption by either relinquishment or termination of parental rights is responsible for the care of the child, and is entitled to the exclusive custody and control of the child until an order of adoption is granted.'"].)[10]  "[T]he statutes clearly reflect a legislative intent that the juvenile court is limited to reviewing whether [the department] abused its discretion in placing the minor or in determining that the placement, once made, remains appropriate." (*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 734.)  The court may not "substitute its judgment for [the department,] as this would interfere with [the department's] exclusive custody and control of the minor and [its] discretion in making adoptive or temporary care placements," but instead must "assess whether [the department] acted arbitrarily and capriciously, considering the minor's best interests." (*Ibid*.)  In view of this rule, the court's decision to address whether DCFS abused its discretion in refusing to move the boy, rather than whether appellant could persuade the court that Joseph should be moved to her home was appropriate.

Appellant further contends that she was not permitted to present evidence, witnesses or testimony.  Nothing in the court's order stating that it would hold a hearing to address abuse of discretion suggested that appellant was precluded from presenting evidence or calling witnesses.  The record reflects that appellant was permitted to address the court.  She represented on her own behalf that she had developed a bond with Joseph during the visits and that his older half-brother had

---

[10]  An exception exists applicable to a "current caretaker" with whom the child has lived at least six months and who has been designated a "prospective adoptive parent." (See § 366.26, subd. (n)(1).)  If the department seeks to remove a child from a prospective adoptive parent, this provision "gives to the court the wide discretion previously afforded the adoption agencies to determine whether the [change in] placement is in the best interest of the child." (*State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 286.)  Neither party contends this provision applies.

also become attached to the boy and missed him. She explained that her adoption home study had been approved. Neither in court nor on appeal did she suggest the existence of other evidence she wished to introduce or witnesses she wished to call. On this record, we see no basis for concluding the court failed to hold a full hearing.

Appellant contends the trial court concluded DCFS had not abused its discretion "without considering any evidence whatsoever." Appellant is wrong. The court stated that it had reviewed the entire record to determine whether DCFS had abused its discretion in refusing to move Joseph to appellant's home. The court also had before it the evidence presented in conjunction with appellant's motion and the representations she had made in court concerning her bond with the boy. The court was persuaded that because Joseph had been with the H.'s for almost all of his short life, there was no abuse of discretion in refusing to place him in a new home with a new caretaker. The court's conclusion was a reasonable one and we see no basis to disturb it.

Appellant suggests that DCFS's abuse of discretion occurred at an earlier stage of the proceedings, when it failed to afford her the relative placement preference required by statute. Having failed to file a petition for modification or seek an abuse of discretion hearing prior to the termination of parental rights, appellant forfeited any such contention. Moreover, we see no evidence of abuse. Relatives who request placement of a dependent child are to be to be given "preferential consideration." (§ 361.3, subd. (a).)[11] But preferential consideration "'does not create an evidentiary presumption in favor of a relative'"; it merely

---

[11]    Appellant does not discuss section 361.3, but cites and relies on the similar provisions of Family Code section 7950. Section 361.3 promotes the same preference for placement with a relative caregiver set forth in Family Code section 7950 and is the more pertinent statute. (See *In re Antonio G.* (2007) 159 Cal.App.4th 369, 377.)

8

"'places the relative at the head of the line when the court is determining which placement is in the child's best interests'" and "assures an interested relative that his or her application for placement will be considered before a stranger's request." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863, quoting *In re Sarah S.* (1996) 43 Cal.App.4th 274, 286.) "'[T]he fundamental duty of the [juvenile] court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.'" (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855, quoting *In re Stephanie M.* (1994) 7 Cal.4th 295, 321.) Moreover, the preference applies only until placement is resolved at the dispositional hearing and "does not arise again until 'a new placement of the child must be made.'" (*In re N.V.* (2010) 189 Cal.App.4th 25, 31, quoting § 361.3, subd. (d); accord, *In re Lauren R.*, *supra*, 148 Cal.App.4th at p. 854.)

It was not until late July, almost three months after the detention, that Mother suggested Clarence might be the father and that appellant presented herself as a potential caregiver. At that point, DCFS was justified in exercising caution with respect to any change in the boy's placement. DNA tests did not confirm Clarence as the biological father for another month. In the meantime, appellant aroused reasonable concern by being less than candid with the caseworker. Among other things, she delayed revealing other members of her household, including her brother Jermaine, who had a history of arrests, and possibly Clarence, who claimed to reside with appellant. DCFS could not approve appellant's home until it had investigated all the occupants and confirmed they had not been convicted of a serious crime. By the disposition hearing, this process was incomplete and appellant's home had not been approved. Accordingly, DCFS did not abuse its discretion in failing to move Joseph by that date. After the disposition hearing, no relative preference applied. In sum, even in the absence of forfeiture, we would find no abuse of discretion.

9

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



EDMON, J.*


---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


10